UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE:                                                    CIVIL ACTION

RICHARD EDWARD HUNT                                       NO. 18-7237

                                                          SECTION M (1)

## ORDER & REASONS

This case is an appeal of several bankruptcy court orders in the case *In re Richard Edward Hunt*, No. 18-10802, an involuntary bankruptcy commenced by petitioner/appellant Issis Roxanna Arais-Elwin ("Elwin").[1] Elwin's appellant brief solely addresses the bankruptcy court's dismissal of the involuntary bankruptcy and its denial of a motion for reconsideration of the dismissal.[2] Having considered Elwin's appellant brief and the applicable law, the Court issues this Order & Reasons.

**I.    BACKGROUND**

Elwin filed an involuntary petition for bankruptcy under Chapter 7 against Richard Edward Hunt ("Hunt") on March 30, 2018.[3] In the petition, Elwin alleged that Hunt owed Elwin $50,353 in child support, $250,000 in damages for harassment and personal injuries, and $1,000,000 in damages for injury to their minor child.[4] Hunt answered the involuntary petition on April 17, 2018, denying that he owed child support on the ground that the state court granted Hunt's motion for a new trial on the judgment of child support, making the judgment unenforceable.[5] Hunt stated

---
[1] R. Doc. 1. Specifically, Elwin appeals the following orders: Bkr. Dkts. 11, 13, 17, 24, 25, 26, and 27. Each of these orders relates to the run up to, or the dismissal of, the involuntary bankruptcy, which is the focus of Elwin's appeal.
[2] R. Doc. 8.
[3] R. Doc. 2-2; Bkr. Dkt. 1.
[4] R. Doc. 2-2 at 6; Bkr. Dkt. 1 at 3.
[5] R. Doc. 2-2; Bkr. Dkts. 9 at 2, 9-2 & 9-3.

1

that the new trial was set to begin on or about May 23, 2018, and that Elwin had requested a continuance.[6] Hunt also averred that he owed none of the claimed damages because Elwin had never filed a tort action against him.[7]

On May 14, 2018, the bankruptcy court held an evidentiary hearing on Elwin's motion to waive a filing fee and Hunt's answer contesting the involuntary petition, whereupon the bankruptcy court entered orders and oral reasons for granting the motion to waive the filing fee, dismissing the petition, and denying Hunt's oral motion for punitive damages for Elwin's initiation of the involuntary bankruptcy.[8] Thereafter, Elwin filed a motion requesting that the bankruptcy court enter written findings of fact and conclusions of law,[9] a motion for a hearing for same,[10] and a motion for reconsideration of the order of dismissal.[11] The bankruptcy court denied the request for a hearing,[12] entered written findings of fact and conclusions of law as to the dismissal,[13] and, treating the motion for reconsideration as a motion for new trial or to alter or amend judgment, denied the motion with reasons.[14]

In its reasons for dismissal, the bankruptcy court found that Elwin lacked standing under 11 U.S.C. § 303(b)(2) because Elwin failed to make a prima facie case, as the lone-filing creditor, that she had a claim of at least $15,775 that was not contingent as to liability or the subject of a bona fide dispute as to liability or amount.[15] In reviewing Hunt's debts to Elwin, the bankruptcy court found that the Civil District Court for the Parish of Orleans ("State Court") had entered an

---

[6] R. Doc. 2-2; Bkr. Dkt. 9 at 2.
[7] R. Doc. 2-2; Bkr. Dkt. 9 at 2.
[8] R. Doc. 2-2; Bkr. Dkt. 17.
[9] R. Doc. 2-3; Bkr. Dkt. 18.
[10] R. Doc. 2-3; Bkr. Dkt. 19.
[11] R. Doc. 2-3; Bkr. Dkt. 22.
[12] R. Doc. 2-2; Bkr. Dkt. 24.
[13] R. Doc. 2-2; Bkr. Dkt. 25.
[14] R. Doc. 2-2; Bkr. Dkt. 26 & 27.
[15] R. Doc. 1-1 at 14, 16-18; Bkr. Dkt. 25 at 2, 8-10.

order on April 26, 2011, requiring Hunt to pay Elwin $234 per month in child support. While the State Court increased the award to $712 per month on November 8, 2013, the State Court subsequently granted Hunt's motion for a new trial on the amount of child support and scheduled a hearing for January 25, 2016. At the time Elwin filed the involuntary petition on March 30, 2018, the State Court hearing on child support had been continued, but was set to be heard on May 23, 2018.[16] (In fact, though, ahead of the May 14, 2018 hearing on the contested bankruptcy filing, Elwin had removed the state-court proceedings to the Eastern District of Louisiana.[17]) Given that the State Court's grant of the new trial rendered the $712 per month judgment unenforceable, the bankruptcy court calculated Hunt's debt using the $234 per month judgment.[18] Accordingly, the bankruptcy court found that Hunt owed Elwin a maximum of $11,935.49 in unpaid child support that was not the subject of a bona fide dispute at the time of the hearing. The bankruptcy court also found that the damages claims were disputed and unliquidated and also were unsubstantiated by any evidence put forth by Elwin. As a result, the court found that these claims were contingent as to liability and should be disregarded for purposes of the test for permitting an involuntary petition under 11 U.S.C. § 303(b)(2). Therefore, the bankruptcy court concluded that the amount of $11,935.49 comprised the total of claims not the subject of a bona fide dispute, or, more

---

[16] R. Doc. 1-1 at 17; Bkr. Dkt. 25 at 9.

[17] *State of Louisiana v. Hunt*, 18-4243 (R. Doc. 1).

[18] R. Doc. 1-1 at 17-18; Bkr. Dkt. 25 at 9-10. Using worksheets prepared by the Child Support Enforcement Division of the Orleans Parish District Attorney's office submitted by Hunt and the $234 per month judgment for the period from April through December of 2011, and for the years of 2012 and 2013, Hunt owed a total of $10,228.49 in child support as of the end of 2013. Hunt paid Elwin a total of $10,507 from April through December of 2013; therefore, Hunt was owed a credit of $278.51 at that time. However, Elwin alleged that Hunt made no child support payments in 2014, 2015, and 2016. In 2017 and 2018, Hunt paid $188. Therefore, using the $234 per month judgment, and taking into account the credit owed and payment given, the bankruptcy court calculated (and thus found) that Hunt owed a total of $11,935.49 at the time of the hearing on May 14, 2018. At the hearing, Hunt did not contest this calculation. Nor does Elwin on this appeal.

3

precisely, that Elwin had not carried her burden of establishing that no bona fide dispute existed as to claims of at least $15,775.[19]

In the bankruptcy court's reasons for denying Elwin's motion for reconsideration of the dismissal, the court noted that Rule 1013(a) of the Federal Rules of Bankruptcy Procedure requires it to "determine the issues of a contested petition at the earliest practicable time and forthwith … dismiss the petition," if appropriate. The bankruptcy court indicated that it gave 21 days' notice of the hearing on the contested petition (the customary period for motions), rather than a shorter period, because Elwin failed to provide sufficient information on Hunt for the court to schedule an expedited hearing. This had the effect of affording Elwin more, not less, notice than is typical for a hearing on a contested petition. Having provided ample notice and an evidentiary hearing at which Elwin offered evidence, questioned Hunt, and testified, and having received no new evidence upon Elwin's motion to reconsider the dismissal, the bankruptcy court concluded that a new trial or amended judgment was unwarranted.[20] Elwin simply failed to meet the statutory threshold for an involuntary petition. Although Elwin also complained about the State Court's grant of a new trial (among many other complaints about the State Court's allegedly corrupt handling of her case), the bankruptcy court noted that the *Rooker-Feldman* doctrine precluded the bankruptcy court from reviewing the State Court's judgment granting the new trial on the question of child support.

## II.  ARGUMENT ON APPEAL

Elwin makes three essential arguments in her appellate brief. First, Elwin contends that the bankruptcy court erred in not using the 2013 judgment of $712 per month in child support to calculate Hunt's debt because the judgment was not the subject of a bona fide dispute. Elwin cites

---

[19] R. Doc. 1-1 at 18; Bkr. Dkt. 25 at 10.
[20] R. Doc. 1-1 at 23-28; Bkr. Dkt. 27 at 2-7.

*In re Marciano*, 446 B.R. 407 (Bankr. C.D. Cal. 2010), *aff'd*, 459 B.R. 27 (B.A.P. 9th Cir. 2011), *aff'd*, 708 F.3d 1123 (9th Cir. 2013), for the proposition that a bona fide dispute does not exist in relation to a debt secured by a state-court judgment when the state-court proceedings are litigated in bad faith.[21] Elwin insists that the bankruptcy court should have conducted a limited analysis of the merits of the State Court's grant of new trial in making its determination as to whether a bona fide dispute existed.[22] If the bankruptcy court had done so, suggests Elwin, it would have concluded that no bona fide dispute existed because the motion for a new trial was filed beyond the time period allowed in article 1974 of the Louisiana Code of Civil Procedure.[23]

Second, Elwin argues that the *Rooker-Feldman* doctrine is inapplicable because she is a "state court winner" rather than a "state court loser," and because she does not complain of an injury caused by a state-court judgment but only of the "state court's utter failure to follow state procedural and substantive law."[24] Given that no trial has yet been held, Elwin submits, no bona fide dispute concerning the child support judgment exists.[25]

Finally, Elwin claims that she was not afforded due process in connection with the bankruptcy court's May 14, 2018 hearing. Elwin asserts that it was improper for the bankruptcy judge to treat Hunt's answer as a motion to dismiss,[26] that she should have been given notice that the bankruptcy judge could dismiss her case at the evidentiary hearing,[27] and that she should have been afforded more time for discovery.[28]

---

[21] R. Doc. 8 at 28-29.
[22] *Id.* at 31.
[23] *Id.* at 13, 22, 31, 36-37, 39-40. Elwin also contends that no bona fide dispute exists because collusion and corruption in the state-court proceedings make it impossible to call them "bona fide." *Id.* at 32, 40.
[24] *Id.* at 36-37.
[25] *Id.* at 38.
[26] *Id.* at 11-15.
[27] *Id.* at 45-47.
[28] *Id.* at 43.

5

## III. LAW & ANALYSIS

### A. Bona Fide Dispute

To determine whether a bona fide dispute exists under 11 U.S.C. § 303(b), the Fifth Circuit follows the Eighth Circuit's objective standard that "includes a clearly erroneous standard of review." *In re Sims*, 994 F.2d 210, 221 (5th Cir. 1993) (quoting *In re Rimell*, 946 F.2d 1363, 1365 (8th Cir. 1991)). The court articulated the methodology for applying the objective standard as follows:

> [T]he petitioning creditor must establish a prima facie case that no bona fide dispute exists. Once this is done, the burden shifts to the debtor to present evidence demonstrating that a bona fide dispute does exist. Because the standard is objective, neither the debtor's subjective intent nor his subjective belief is sufficient to meet this burden. The court's objective is to ascertain whether a dispute that is bona fide exists; the court is not to actually resolve the dispute. This does not mean that the bankruptcy court is totally prohibited from addressing the legal merits of the alleged dispute; indeed, the bankruptcy court may be required to conduct a limited analysis of the legal issues in order to ascertain whether an objective legal basis for the dispute exists. Finally, because the determination as to whether a dispute is bona fide will often depend ... upon an assessment of witnesses' credibilities and other factual considerations, the bankruptcy court's determination in this regard is a factual finding that may be overturned on appeal only if it is clearly erroneous.

*Id.* (quoting *In re Rimell*, 946 F.2d at 1365 (citations omitted)). "[T]he existence of a bona fide dispute must be determined as of the date the petition was filed." *In re Norris*, 114 F.3d 1182, 1997 WL 256808, at *5 (5th Cir. Apr. 11, 1997). When considering whether a bona fide dispute exists, courts determine whether the litigated claim directly challenges the liability or amount of the debt. *See In re Green Hills Dev. Co.*, 741 F.3d 651, 659 (5th Cir. 2014). "Bankruptcy courts routinely consider the evidence and character of pending but unresolved litigation as evidence of a bona fide dispute." *Id.*

The bankruptcy court determined that Elwin failed to make a prima facie case that debts surpassing the statutory threshold were not the subject of a bona fide dispute. In making this

determination, the bankruptcy court specifically found that the State Court granted Hunt's motion for a new trial of the 2013 judgment awarding $712 per month in child support.[29] The bankruptcy court cited *Gilley v. Wendy's, Inc.*, 723 So. 2d 517, 523 (La. App. 1998), for the proposition that, under Louisiana law, "the granting of a new trial has the effect of vacating and setting aside the original judgment."[30] Thus, the 2011 State Court judgment awarding $234 per month in child support was the only enforceable judgment by which Hunt's child support obligation could be calculated. The bankruptcy court concluded, at a minimum, that Elwin did not carry her burden under *Sims* of establishing a prima facie case that the 2013 child support judgment was not the subject of a bona fide dispute.[31] The bankruptcy court reiterated this conclusion in denying Elwin's motion for reconsideration, finding that she "raised no manifest error of law or fact or newly discovered evidence."[32] This Court agrees; the bankruptcy court's finding that a bona fide dispute existed as to the State Court's child support judgment is not clearly erroneous.

Elwin's reliance on *In re Marciano* is misplaced. There, the Ninth Circuit upheld a per se rule that unstayed non-default state-court judgments ***on appeal*** are not subject to a bona fide dispute under 11 U.S.C. § 303(b)(1). 708 F.3d at 1128. Here, the State Court granted a new trial, vacating and setting aside the 2013 child support judgment, thereby effectively reinstating the 2011 judgment – a matter altogether distinct from the appeal of a judgment as was the case in *In re Marciano*. Moreover, Elwin does not challenge the bankruptcy court's factual finding that the State Court granted a new trial to determine child support. Rather, Elwin challenges the merits of the State Court's decision to grant the new trial.[33]

---

[29] R. Doc. 1-1 at 10; Bkr. Dkt. 25 at 2.
[30] R. Doc. 1-1 at 16; Bkr. Dkt. 25 at 8.
[31] R. Doc. 1-1 at 18; Bkr. Dkt. 25 at 10.
[32] R. Doc. 1-1 at 27; Bkr. Dkt. 26 at 6.
[33] For the reasons reviewed below, *Rooker-Feldman* forbids a wholesale examination of the State Court's decision. However, to the extent that *Sims* calls for "a limited analysis of the legal issues in order to ascertain whether an objective legal basis for the dispute exists," 994 F.2d at 221, suffice it to say that an examination of the State Court

7

### B. The *Rooker-Feldman* Doctrine

Although Elwin challenges both the merits of the State Court's grant of new trial on child support and the integrity of the State Court proceedings in general, the bankruptcy court said it was prohibited from reviewing the State Court's judgment under the *Rooker-Feldman* doctrine, which provides that "federal district courts, as courts of original jurisdiction, lack appellate jurisdiction to review, modify, or nullify final orders of state courts." *Weekly v. Morrow*, 204 F.3d 613, 615 (5th Cir. 2000). The *Rooker-Feldman* doctrine bars "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). The four elements of the *Rooker-Feldman* doctrine are: (1) a state-court loser; (2) alleging harm caused by a state-court judgment; (3) that was rendered before the district court proceeding began; and (4) the federal suit requests review and reversal of the state-court judgment. *Id.*

Elwin argues that she is not a "state-court loser" but a "state-court winner," such that *Rooker-Feldman* is inapplicable.[34] The simple fact that Elwin complains about the State Court's handling and disposition of Hunt's motion for new trial belies her status as a "state-court winner." Winners rarely complain; losers do. That the 2013 child support judgment, which Elwin is required to show is not in dispute, was set aside by the motion for new trial necessarily establishes both that Elwin was a "state-court loser" in the sense that the level of child support reverted to the

---

record reveals the State Court's judgment granting a new trial and the record contains Hunt's motion for new trial setting forth the reasons and authorities urged by Hunt for why the State Court should have considered the motion for new trial well after the delay for such motions established by article 1974 of the Louisiana Code of Civil Procedure. R. Doc. 2-2 at 43-48, 89; Bkr. Dkts. 9-2 & 9-3.

[34] R. Doc. 8 at 34-39.

amount set by the 2011 judgment, and that the amount of child support is the subject of a bona fide dispute.

"Federal courts have consistently applied the *Rooker-Feldman* doctrine as a bar to federal jurisdiction over matters related to the family disputes of divorce and child support." *Evans v. Williamson Cty. Gov't*, 2015 WL 4621449, at *4-5 (W.D. Tex. May 28, 2015) (collecting cases), *adopted,* 2015 WL 4624708 (W.D. Tex. July 31, 2015). Here, as in *Evans*, the state-court action as to which review is sought involves matters of child support. The court in *Evans* applied the well-established prudential rule against federal courts addressing such matters:

> It has been long established that federal courts do not have jurisdiction to decide domestic relations disputes. *See Ex parte Burrus*, 136 U.S. 586, 593-94, 10 S.Ct. 850, 34 L.Ed. 500 (1890) ("[t]he whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the states, and not to the laws of the United States); *Franks v. Smith*, 717 F.2d 183, 185 (5th Cir. 1983) ("issues of domestic relations are the province of state courts, going bank to *Ex parte Burras*"). Thus, federal courts generally abstain from resolving cases involving intrafamily relations, including child support actions. *See Congleton v. Holy Cross Child Placement Agency, Inc.*, 919 F.2d 1077, 1078 (5th Cir. 1990) (as a general rule, federal courts refuse to hear domestic disputes, including child custody action); *Chandler v. Commander, Army Fin. & Accounting Ctr.*, 863 F.2d 13, 15 (5th Cir. 1989) (federal courts have traditionally abstained from domestic relations cases because of strong state interest and competence in issues presented by such cases); *Goins v. Goins*, 777 F.2d 1059, 1062 (5th Cir. 1985) (state court has strong interest in and expertise to decide domestic issues which federal courts lack).

*See also Assa'ad-Faltas v. City of Columbia*, 2010 WL 6549845, at *3 (D.S.C. Dec. 10, 2010) ("[A]ppeals of orders issued by lower state courts must go to a higher state court.").

Moreover, resolving any issue concerning the application of *Rooker-Feldman* is not necessary to the resolution of this appeal. The principal question on appeal is Elwin's standing to bring the involuntary bankruptcy against Hunt. It was Elwin's burden to make a prima facie case that debts exceeding the statutory threshold were not the subject of a bona fide dispute at the time she filed the involuntary petition against Hunt, and she did not do so, having failed to establish

that the State Court's 2013 child support judgment was not in dispute. Instead, because the 2013 judgment had been vacated by the State Court's grant of a new trial, the child support issue remains the subject of a bona fide dispute in State Court. It is not for this Court to resolve that dispute regardless of whether the *Rooker-Feldman* doctrine applies; it is enough that the dispute exists.

## C. Procedural Challenges

Elwin claims that the bankruptcy judge improperly considered Hunt's answer as a motion to dismiss; that she had inadequate notice that the bankruptcy judge could dismiss her petition at the May 14, 2018 hearing; and that she should have been allowed to conduct discovery.

In urging that the bankruptcy court violated due process by treating Hunt's answer to the involuntary petition as a "motion to dismiss," Elwin misapprehends the fundamentals of what the court did. "Recognizing that involuntary bankruptcy is a particularly severe remedy, Congress limited the circumstances in which creditors may force a debtor into such a proceeding." *In re Green Hills Dev. Co.,* 741 F.3d at 655 (citation omitted). Section 303 of Title 11 specifies the limited circumstances in which creditors have standing to file an involuntary petition against a debtor, and permits the debtor to file an answer contesting the petition and the creditor's standing to compel the involuntary bankruptcy. Rule 1013(a) of the Federal Rules of Bankruptcy Procedure provides that the bankruptcy court is to determine the issues of a contested petition and enter any appropriate order, including, expressly, possibly dismissing the petition. Consequently, the bankruptcy court, in hearing the issues raised by, and dismissing, the contested petition for lack of standing, dealt procedurally with Hunt's answer just as the law requires.

Rule 1013(a) also mandates that the bankruptcy court hold a hearing to determine the merits of the involuntary petition "at the earliest practicable time." If the petitioner lacks standing, the involuntary petition must be dismissed. *See In re Green Hills Dev. Co.*, 741 F.3d at 655. The

debtor is afforded 21 days from the date after service of the summons to answer the petition, and the hearing generally occurs on an expedited basis. Fed. R. Bankr. P. 1011(b); 9 COLLIER ON BANKRUPTCY ¶ 1013.02 (16th ed. 2018). Rule 1003(b) "requires that the Bankruptcy Court pause before hearing on the merits of an involuntary petition in only one circumstance" – to ensure that other creditors have a "reasonable opportunity" to become petitioners under 11 U.S.C. § 303(c) when the debtor's answer avers the existence of 12 or more creditors. *In re Vortex Fishing Sys.*, 277 F.3d 1057, 1071 (9th Cir. 2002) (citing Fed. R. Bankr. P. 1003(b)). Here, Elwin asserted that Hunt had fewer than 12 creditors; Hunt testified that he had 3. Thus, the bankruptcy court's finding that Hunt had fewer than 12 creditors was not clearly erroneous.[35] Therefore, no delay under Rule 1003(b) was necessary before holding the hearing. Regardless, the bankruptcy court did not schedule the hearing on the contested petition until after Hunt timely answered the petition, and then the court gave the parties 21 days' notice of the hearing. Given that the Rules require no more than 21 days' notice for most motions, *see* Fed. R. Bankr. P. 2002(a), this Court holds that the bankruptcy court provided Elwin with adequate notice. That dismissal of her petition was a possible outcome of the hearing should have been apparent from even a cursory reading of the Rules. Although the Court notes that Elwin is proceeding pro se and the Court construes pro se filing liberally, pro se parties are still required to "abide by the rules that govern federal courts." *E.E.O.C. v. Simbaki, Ltd.*, 767 F.3d 475, 484 (5th Cir. 2014).

Finally, Elwin complains that she was not permitted discovery. However, because Hunt's requested discovery related exclusively to the alleged corruption and taint of the State Court proceedings generally, and not with the dollar threshold required for standing to bring the involuntary petition, any limitation on discovery imposed by the bankruptcy court did not

---

[35] R. Doc. 1-1 at 15; Bkr. Dkt. 25 at 7.

prejudice Elwin's substantial rights or amount to an abuse of the bankruptcy court's wide discretion to manage the case. *See In re Immudyne, Inc*., 218 B.R. 860, 861 (Bankr. S.D. Tex. 1998). Moreover, Elwin fails to identify any relevant discovery she was prohibited from conducting or to explain how such discovery would have established her standing to bring the petition. At the May 14, 2018 hearing, the bankruptcy court permitted Elwin to adduce evidence directed to the issue of standing; she simply failed to carry her burden. And with both parties proceeding pro se, the bankruptcy court appropriately exercised its wide discretion to manage the trial by examining witnesses on each side. Elwin was afforded due process.

**IV. CONCLUSION**

Accordingly, for the foregoing reasons,

**IT IS ORDERED** that the bankruptcy court's orders dismissing Elwin's involuntary petition and denying her motion for reconsideration are AFFIRMED.

New Orleans, Louisiana, this 14th day of February, 2019.

_____
BARRY W. ASHE
UNITED STATES DISTRICT JUDGE